HAUGHTON (BEERS v.). See Case No. 1,-230.

## Case No. 6,224.

HAUGHTON et al. v. EUSTIS et al.

[5 Law Rep. 505.]

Circuit Court, D. Vermont. Oct. Term, 1842.

BANKRUPTCY—ATTACHMENT—LIEN OF—STATUS OF LEVY UNDER SUBSEQUENT JUDGMENT.

The property of the alleged bankrupts was attached on mesne process on March 14th. On April 17th, a petition in invitum was filed, praying for a decree of bankruptcy. Subsequently, but before a decree, judgment was recovered, and the goods were levied upon. *Held*, that the attachment constituted a lien or security within the meaning of the proviso in the second section of the bankrupt act [of 1841 (5 Stat. 440)],

and was thereby saved from the operation of that act. Ex parte Foster [Case No. 4,960]; Parker v. Muggridge [Id. 10,743]; Ex parte General Assignee [Id. 5,305]; Downer v. Brackett [Id. 4,043].

[Cited in Re Reed, Case No. 11,640.]

[Cited in Martin v. Dryden, 6 Ill. 213; Kittredge v. Warren, 14 N. H. 536; Kittredge v. Emerson, 15 N. H. 252; Hubbard v. Hamilton Bank, 7 Metc. (Mass.) 344.]

On the 14th day of March, 1842, Eustis & Co. attached on mesne process the goods of Rice & Boardman. At the May term of Windsor county court, in which the suit, commenced by said process, was entered, judgment was recovered by the plaintiffs. On the 23d of June, execution was taken out on said judgment and levied on the goods thus attached. On the 28th of said June, Haughton and others procured from the district court of the United States, an injunction upon the sale of said goods on said execution, setting forth, by petition, as the ground of said injunction, that on the 15th day of said March, said Rice & Boardman committed an act of bankruptcy, and said Haughton and others had on the 17th of April last, filed their petition that said Rice & Boardman be declared bankrupts, and that said petition was then pending. On the 31st of August, Eustis & Co. moved the district court to dissolve said injunction. Which motion said court adjourned into the circuit court.

S. S. Phelps and William Upham, counsel for Haughton and others, relied mainly on Ex parte Foster [supra], and the authorities therein cited.

A. Tracy and L. B. Peck, for Eustis & Co., cited Rev. St. c. 42, §§ 50, 51; Id. c. 49, § 53; 2 Aiken, 215; 2 Vt. 388; 4 Vt. 88; 9 Vt. 309; 12 Vt. 65; 1 Day, 117; 2 Caines, 300; 9 Mass. 209; 16 Pick. 264; 9 Conn. 522.

THOMPSON, Circuit Justice. In the first place, there is no pretence of anything fraudulent in the proceedings of the attaching creditors. Their debts were bona fide, and have gone into judgment. Their attachment was made in good faith agreeably to the laws of the state, and before any act of bankruptcy by the debtors. They had, up to the service of the injunction, taken the steps required by the laws of the state to enforce the payment of their debts. Does the attachment in this case constitute a lien or security, within the meaning of the proviso in the second section of the bankrupt law, and is it thereby saved from the operation of that law? In my opinion it does. The doctrine in this state is, that an attachment of property on mesne process, constitutes a lien. It is so treated in the statute, and so deemed and denominated by the supreme court of the state. The courts of the United States are to be governed by the decisions of the state courts, as to what the state laws are: the law of this state, thus clearly appearing, must gov-

ern this court in giving operation to the bankrupt law, in the case before me.

To the argument urged by counsel, that the proviso at the close of the second section was inserted to save certain rights peculiar to the laws of Louisiana, it is answered, that it does not appear from anything in the act, that the proviso was intended to have reference to Louisiana alone. And certainly, though counsel in argument might take the liberty, it would by no means be proper for the court to regard the history of the bill in its progress of becoming a law, in giving effect to what are clearly its provisions. It is said, too, that by the words "lien and other securities" only such are intended as are created by contract. Now this position is not true even with reference to Louisiana; for divers rights in respect to, and securities upon property in that state, within the clear meaning of the language of that proviso, arise as entirely by operation of law, and as little by virtue of contract either express or implied, as the lien by judgment in New York, or by attachment on mesne process in this state. That a judgment, docketed before an act of bankruptcy committed, is not in New York a lien on the property of the debtor, valid as against the operation of the bankrupt law, is a doctrine to which I cannot assent. Again, I am clear, that the phraseology and evident import of the law itself does not justify restricting the operation of the saving clause of the second section, to common law liens merely. In the different states there are various securities upon property, unknown to the common law, which, by the laws of the respective states, are as essentially a lien upon the property, as these existing at common law. And in my opinion, it is the purpose of the bankrupt law to preserve those liens or securities, thus peculiar to the several states, as much as to preserve common law liens. It is of no importance what they are called, whether liens, or securities, or anything else. What the bankrupt law provides for and saves against proceedings in bankruptcy, is any security attaching upon property by the state law. Now attachment on mesne process, by the laws of this state, is a security upon the property attached—a security valid as against the world, and indefeasible, excepting by the attaching creditor, up to the rendition of judgment. He alone can control it, and if he recover, then that judgment must be satisfied, pro tanto, out of that property, unless he gives up his right to such satisfaction. Indeed, such an attachment constitutes more peculiarly a lien, than a docketed judgment in New York—for by such attachment, the security is fixed upon specific property, and that specific property is holden to respond the judgment, while a judgment in New York is a general lien on all the debtor's property, and no specific part is holden to satisfy that judgment till levied on by execution. However, a judgment in New York, and an attachment on mesne process in this state, rest on the same principle as to the security they fix upon the property affected by them: and that security, when it fastens before an act of bankruptcy committed by the debtor, is not to be invalidated by such act. As to the argument, that the rights or security upon property attached, is contingent, and depends upon a course of judicial proceeding to render it perfect and absolute, it is sufficient to remark, that it is no more contingent than a lien by mortgage. That is in its very nature defeasible. So, in fact, is the common law lien. Defeasibility, contingency, necessarily enter into the idea of a lien, for the moment the right becomes absolute, it ceases to be a lien. In case of mortgage, a course of judicial proceeding is as necessary to render absolute the right and title to the property, as in case of attachment. Injunction dissolved.

NOTE. This report is taken from the Vermont Mercury newspaper, of January 20, 1843, which has been sent to us from some unknown source. We find the following remarks on the case in the same newspaper.—Editor Law Reporter.

"It was hoped that the opinion of Mr. Justice Thompson in the case below named would have been given to the public from his own pen. But as that hope has not yet been, and seems not likely to be, gratified, one who was present at the trial and decision of the case, and who took minutes of the opinion, ventures to present the following outline of that opinion. He believes it to embody the substance of the remarks of the learned judge, and is assured in that belief by the concurrence of one of the principal counsel employed in the argument, to whom this report has been submitted. Since seeing the remarks of the editor in the January number of the Law Reporter, on the opinion of Judge Prentiss, of Vermont, in the cases of Downer v. Brackett [Case No. 4,043], and In re Cook [Id. 3,152], it seems proper to remark, that in this case, the only question in issue was, whether an attachment on mesne process, by the laws of Vermont constitutes a lien on the property attached, within the meaning and saving of the proviso of the second section of the bankrupt law. This was the only question raised by counsel, and the only one passed on by the court. For it was not contended that the judgment subsequently obtained, could have any operative effect as to the property, unless the attachment itself constituted a valid lien."